BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
KEITH PATRICK BANNER (SBN 259502)
KBanner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Proposed General Bankruptcy Counsel for
Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>B&B Liquidating, LLC,<br><br>Debtor and Debtor in Possession. | Case No. 2:18-bk-11744-NB<br><br>Chapter 11<br><br>**DECLARATION OF BRIAN ALLEN OF CLEAR THINKING GROUP LLC, FINANCIAL ADVISOR TO THE DEBTOR IN SUPPORT OF FIRST DAY MOTIONS**<br><br>**<u>Emergency Hearing</u>**<br>**Date:   February 22, 2018**<br>**Time:  2:00 p.m.**<br>**Place:  Courtroom 1545**<br>**             255 E. Temple Street**<br>**             Los Angeles, CA 90012** |

1

DECLARATION OF
BRIAN ALLEN

07491-00003/2970800.3

## **DECLARATION OF BRIAN ALLEN**

I, Brian Allen being fully sworn, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am a Managing Director of Clear Thinking Group LLC ("CTG") proposed financial advisor to the Debtor and Debtor in Possession B&B Liquidating, LLC, f/k/a B&B Bachrach, LLC, (the "Company" or the "Debtor"). Except as otherwise indicated, all facts as set forth in this Declaration are based upon my personal knowledge, upon information supplied to me by employees of the Company and upon my review of the books and records of the Company. If I were called to testify, I would and could testify competently to the facts set forth in this Declaration.

2. I make this Declaration in support of the following emergency "first day" motions filed by the Debtor:

   (a) *Emergency Motion for Interim and Final Orders Approving Stipulation with Siena Lending Group LLC; (1) Authorizing Post-Petition Financing; (2) Authorizing Debtor's Use of Cash Collateral and (3) Related Relief* (the "Financing Motion") and the accompanying *Stipulation Regarding Continuance of Financing of Debtor and Debtor In Possession, Priority of Advances Made, Modification of the Automatic Stay and Adequate Protection* (the "Financing Stipulation");

   (b) *Emergency Motion for Interim and Final Order: (1) Authorizing the Conducting of Inventory Liquidation, Store Closing or Similar Themed Sales; (2) Approving the Assumption of Consulting Agreement with Liquidation Consultant Great American Group, LLC/ Tiger Capital Group, LLC; and (3) Related Relief* (the "Store Closing Sale Motion"); and

   (c) *Emergency Omnibus Motion for Order Authorizing Debtor: (1) To Reject Certain Unexpired Leases of Nonresidential Real Property Retroactively to the Petition*

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

*Date; and (2) to Reject Certain Unexpired Leases of Nonresidential Real Property Pursuant to Rejection Notice Procedures* (the "Lease Rejection Motion").

3.   The Debtor retained the services of CTG pursuant to the terms of an Engagement Agreement dated as of January 30, 2018 (the "Engagement Agreement"). Pursuant to the Engagement Agreement which was later amended, CTG will provide financial advisory services to the Debtor through the course of its liquidation, including, but not limited, to the following:

(a) preparing a budget for the Debtor's liquidation in the chapter 11 case;

(b) soliciting bids from liquidation firms;

(c) overseeing the updating of the cash flow each week; reviewing of the weekly cash flow and assess the weekly variances and oversee the drafting of appropriate variance reports;

(d) providing ongoing advisement to the Debtor regarding the bankruptcy and liquidation process, including the inventory liquidation sales at the various retail locations;

(e) overseeing and assisting the Debtor and counsel in the preparation of the Statement of Financial Affairs and the required bankruptcy schedules; and

(f) overseeing the preparation of the monthly operating reports to be submitted to the U.S. Trustee.

4.   CTG has significant expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in chapter 11 proceedings in numerous cases, including with chapter 11 restructuring, asset liquidation, sale of distressed assets, and other distressed company circumstances. Examples of debtor retail advisory assignments in which CTG has been actively involved include, among others: an earlier filing of Bacharach, Inc., Bag'n'Baggage, Inc., Barbecues Galore, Inc., Boot Town Western Warehouse, Inc., Copeland Sports, Inc., Crabtree & Evelyn, Inc., Delias, Inc., Gordmans, Inc., Hancock Fabrics, Inc., Joyce Leslie, Inc., Lillian Vernon, Inc., Loehmann's Holdings, Inc., Market Antiques & Home Furnishing, Inc., Marsh Supermarkets Company, Namco, LLC, One Price Clothing, Inc., Prints Plus, Inc., Rag Shops, Inc., Sofa Express, Inc.,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2

DECLARATION OF BRIAN ALLEN

07491-00003/2970800.3

Swoozies, Inc., The Parent Company, Inc., and The Walking Company, Inc.

5. I have over twenty years of experience serving in Controller and CFO positions with both public and private companies. Over the past nine years, I have been engaged by numerous companies in the consumer product, retail and manufacturing industries assisting with strategic and financial alternatives, and serving in interim senior financial positions. During my career I have had direct responsibility for the accounting, finance, treasury, information technology, real estate and investor relations functions. Prior to joining CTG, I owned a financial advisory practice with a focus on middle market, consumer product businesses. I am a licensed Certified Public Accountant. I have assisted numerous debtors in their related bankruptcy cases including Copeland Sports, Inc. and The Walking Company, Inc. and, Barbecues Galore, Inc.

6. Shortly after the Debtor's retention of CTG, we analyzed the sales reports and other financial information of the Debtor and identified that sales have been in decline and that the Company was not generating enough cash and had insufficient liquidity to satisfy its current obligations, including payroll, rents and taxes.

7. In addition, CTG assessed that the Company did not have any alternative sources of financing and insufficient time to seek a refinancing or possible sale. At the same time considerable pressure was being applied by Siena. We worked wth the Debtor to evalute whether there were any other alternatives short of liquidaiton available, and determined that the best course of action to maximize returns to creditors would be a liquidation of the Company.

8. Thereafter, we assisted the Company in retaining the services of an appropriate liquidation firm to oversee the liquidation of the Company's inventory and furniture, fixtures and equipment, through a series of inventory liquidation, store closing, or similarly themed sales. In this process, twelve liquidation firms were contacted, of which ten signed non-disclosure agreements. Those firms that executed non-disclosure agreements were given access to an online data room containing various financial and other information of the Company, including (a) a list of stores, landlord, physical location, rent and other occupancy expenses required to operate the location; (b) book inventory by location and information relating to cost and retail values; (c) projected inventory at potential sales commencement dates; (d) a list of recently received

inventory for Spring, 2018 available for sale; (e) historical sale data and operating results by store; and (f) information regarding profit margins.

9. After potential liquidation firms were provided access to the online data room, each were asked to submit bids, both fee-based and equity-based, no later than February 13, 2018 assuming both a bankruptcy and non-bankruptcy liquidation. Potential liquidators were also given the opportunity to consult with the Company's management and eight firms participated in subsequent conference calls. Also, three potential liquidators took a tour of the Company's corporate office and distribution center.

10. Ultimately four bids were received from potential liquidators. All bids received were fee-based and the Company received no equity bids. After comparing the bids received, and after ensuing negotiations, the Company, with the advice and consent of Siena, liquidation selected consultant Great American Group, LLC and Tiger Capital Group, LLC (collectively, the "Liquidation Consultant") and entered into the Consulting Agreement attached to the Store Closing Sale Motion as Exhibit 2 (the "Consulting Agreement").

11. Concurrently while seeking an appropriate liquidator, CTG, working with the Company, prepared several liquidation scenarios, both in a chapter 11 bankruptcy and outside of a chapter 11 bankruptcy, to assess which was the optimal route for liquidation. Based on this analysis, it appeared a liquidation outside of a chapter 11 bankruptcy could be viable if an agreement could be reached with all current landlords to allow the stores to remain open and permit the conducting of inventory liquidation sales therefrom.

12. With the out-of-bankruptcy liquidation appearing to be a viable option, CTG assisted the Debtor in preparing proposals and negotiating with the various landlords. Ultimately, while the Company was able to reach agreements with certain landlords, it was unable to reach agreements with others. Without agreements from those remaining landlords, the Company would be unable to maximize recovery of its assets through an out-of-bankruptcy liquidation. At the same time, various landlords began to exercise default remedies against the Debtor, which precipitated the filing of the chapter 11 bankruptcy case.

13. CTG, with the assistance of the Company's management, prepared a weekly cash

4

DECLARATION OF
BRIAN ALLEN

flow model (the "Budget") based on a 16-week liquidation of the Company performed by the Liquidation Consultant. The 16-week budget has been shared with Siena. A true and correct copy of the Budget for the next eight weeks through April 13, 2018 is attached to the Financing Stipulation as Exhibit 3. The full 16-week budget is not attached hereto, as that budget may need to be adjusted from time to time depending on the performance of the sales projections. Accordingly, the initial Budget of 8 weeks is supplied at this time, so that later a budget, as adjusted if necessary, can be approved by Siena before being filed with the Court.

14. The Budget, as well as the full 16-week budget, follows the Loan Agreement and the Modification by reflecting that the pre-petition loan of approximately $6,260,000 will be frozen as of the petition date, and that all further advances made by Siena will be regarded as a post-petition loan. Likewise, all receipts from sales will be applied first to the pre-petition loan, which is projected to be fully paid off during the week ended May 4, 2018. Thereafter sales proceeds will be applied against the post-petition loan. The 16-week budget projects that after complete liquidation of the Company's assets, and payment for expenses of the liquidation, Siena will be approximately $438,000 short.

15. In preparing the Budget, the Company provided CTG data such as inventory reports, payroll data, and operating expense run rates. Numbers utilized in the budget included estimates where data was not available or impractical to obtain. In addition, the sales projections utilized in the Budget were based on the information received from the Liquidation Consultant.

16. The operating expenses in the Budget included only those expenses considered critical to maintaining operations through a liquidation. In addition, estimates of expenses directly related to the chapter 11 bankruptcy were included in the Budget.

17. The full 16-week budget provides for an estimated $63,000.00 for certain sales commissions to certain key management employees at the Closing Stores who remain in the employ of the Debtor during the Store Closing Sales.

18. In preparing the Budget, CTG has made all reasonable efforts to verify and validate the sales and expenses, included in the weekly cash budget, where practical. CTG believes the cash budget is complete in all material respects but actual results may vary based

5

DECLARATION OF
BRIAN ALLEN

upon a variety of variables. (i.e., sales may not be achieved, and/or there could be additional expenses not identified by the Company).

19.  An expeditious completion of the sale is central to returning the greatest amount to the Company's creditors. Based upon my analysis of the Company's expenses, any delay in approval of the store closing sales that are the subject of Store Closing Sale Motion will cause the Debtor to incur up to additional $271,903 for each extra month's rent and an additional $8,335 to $67,400 per week in payroll and other operating expenses at the Closing Stores.

[*Signature Page Follows*]

Main Document    Page 8 of 8

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Los Angeles, California on this 20th day of February, 2018.

_____
BRIAN ALLEN